IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **VERA ANNETTE MONTGOMERY and STATE FARM MUTUAL AUTO INS. CO.,** ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | CIVIL ACTION 09-0123-WS-M |
| **UNITED STATES OF AMERICA and WENDY LYNN PEREZ,** ) ) ) | |
| Defendants. ) | |

**ORDER**

This matter came before the Court for non-jury trial on August 18, 2010. Both sides called witnesses and introduced exhibits into evidence. The record is now closed. Following the presentation of evidence, the Court heard closing arguments from both sides and received limited post-trial briefing concerning defendants' hearsay objection (doc. 70). Such briefing having been completed, the undersigned now enters findings of fact and conclusions of law, pursuant to Rule 52(a), Fed.R.Civ.P.[1]

---

[1] The Court need not address defendants' hearsay objection in detail. The accident report whose admissibility defendants challenged was withdrawn by plaintiff prior to the start of trial. Accordingly, the hearsay objection found at doc. 70 is **moot**. Moreover, in accordance with plaintiff's stipulation, the Court will not consider page 21 of Trooper Dorman's deposition transcript found at Plaintiff's Exhibit 4 because that excerpt contains inadmissible hearsay. That said, the Court will consider the excerpt of Trooper Dorman's testimony found at pages 29-32 of Plaintiff's Exhibit 4. Such testimony does not implicate hearsay concerns because it recounts the witness's first-hand observations of the intersection and traffic light operations the day after the accident. *See, e.g., Ex parte McKenzie*, 37 So.3d 128, 132 (Ala. 2009) ("Alabama courts have long held that an officer investigating an automobile accident may testify to facts derived from the officer's personal observation of the scene of the accident, even if the officer did not personally witness the accident.").

**I.      Nature of the Case.**

This action arises from a two-vehicle accident that occurred in March 2007 in Baldwin County, Alabama. One vehicle was owned and operated by plaintiff Vera Annette Montgomery.[2] The other was a vehicle owned by the U.S. Navy and driven by defendant Wendy Lynn Perez. Montgomery brought a negligence claim against the United States and Perez pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1) and §§ 2671 *et seq*. Before trial, the parties stipulated and agreed that Montgomery would be entitled to $85,000 in damages in the event that the Court found the United States liable. (Doc. 66, at 2, 7.) Accordingly, the sole issue litigated at trial was whether defendants are or are not liable to Montgomery on a negligence theory under Alabama law.

**II.     Findings of Fact.**

Based on the evidence presented at trial, including both live testimony and exhibits admitted into evidence, and after fully considering the parties' respective arguments as to the proper interpretation of that evidence, the Court makes the following findings of fact by a preponderance of the evidence pursuant to Rule 52(a)(1), Fed.R.Civ.P.:

At a few minutes before 10:00 a.m. on March 20, 2007, plaintiff Vera Montgomery and her adult daughter, Kimberly Montgomery Davis, left their home on County Road 13 in Fairhope, Alabama with the intention of making a short drive to Mobile Bay to embark on a leisurely walk on a picturesque spring morning. The pair departed the house in Montgomery's white 2005 Yukon (a full-sized sport utility vehicle manufactured by General Motors that Montgomery had been driving for two years), with Montgomery behind the wheel.[3]

---

[2] There is a second remaining plaintiff in this case, namely, State Farm Mutual Auto Ins. Co., whose claims sound in subrogation. State Farm was excused from attending or participating in the trial, and its claims need not be addressed separately. Per agreement of the parties, if Montgomery prevails, she is responsible for satisfying State Farm's subrogation claim in the amount of $32,753.83 from her award. (Doc. 66, at 2.) By contrast, if Montgomery does not prevail, then all parties concur that State Farm should have and recover nothing.

[3] Montgomery has continuously held an Alabama driver's license since 1983, and previously possessed licenses issued by other states. Her driving history includes a 1997 automobile accident in which she struck a vehicle that had run a stop sign, as well as a speeding ticket issued in approximately 2007 for a moving violation on the Highway 13 extension in Fairhope, Alabama.

Montgomery and Davis were not in a hurry that morning. They had no pressing business and were not operating under a deadline or timetable.

After driving one mile north on County Road 13, Montgomery turned westbound onto a two-lane road known as County Road 32 ("CR 32"). From that point, it was approximately one to one and a half miles until the intersection of CR 32 and Highway 98, a four-lane thoroughfare oriented north-south at that location. As they proceeded, Davis (the vehicle's passenger) began talking on her cell phone, prompting Montgomery to tell her to get off the phone. Montgomery felt it was rude for Davis to be talking on the phone when the two of them were going for a walk. Davis ended her call promptly, when the Yukon was approximately two blocks from the CR 32 / Highway 98 intersection.

The intersection of CR 32 and Highway 98 handles traffic heading westbound on CR 32 (as Montgomery and Davis were), traffic heading eastbound on CR 32, and traffic heading north and south on Highway 98. That intersection also is equipped with separate left turn lanes on both the northbound and southbound sides of Highway 98, to enable northbound traffic on Highway 98 to turn west onto CR 32 and southbound traffic on Highway 98 to turn east onto CR 32. The traffic light at that intersection is equipped with standard green, yellow and red signals, as well as green left turn arrows for Highway 98 traffic in each turn lane to facilitate left turns onto CR 32.

Montgomery estimates that she approached the CR 32 / Highway 98 intersection at a speed of approximately 40 to 45 miles per hour. She did not stop at that intersection, but continued straight through it; however, she did brake slightly because there is a "bump" at the intersection which could cause a vehicle to bottom out if traversed at excessive speed. At the time that Montgomery's Yukon entered the intersection, still headed westbound on CR 32, a neutral witness, Joshua Ridgdell, was stopped and idling his vehicle in the left turn lane on northbound Highway 98. Ridgdell's light was red, so he sat watching the light and waiting for a green arrow to enable him to turn left onto CR 32 westbound. There were no cars idling in front of Ridgdell, so he enjoyed an unobstructed view of the intersection, with no distractions. After his light changed to a green arrow, Ridgdell looked to make sure the intersection was clear before proceeding into it. As he looked into the intersection, preparing to let off his clutch and begin his left turn, an SUV entered his line of sight from the east on CR 32. As that SUV (which was Montgomery's Yukon) continued traveling through the intersection headed west on CR 32,

it passed in front of Ridgdell then had a jarring collision with a white van heading south through the intersection. That van (which was the U.S. Navy-owned vehicle driven by defendant Wendy Perez)[4] was traveling south on Highway 98 in the westernmost lane. Both post-accident photos in evidence and witness testimony at trial show that the front of the van struck the passenger side of the Yukon in the front door area.[5] Upon impact, Montgomery's Yukon became airborne and rolled multiple times before coming to rest on the side of the roadway, while the van spun 360 degrees. Both Montgomery and Davis sustained injuries in the accident.

The Court credits Ridgdell's testimony that the traffic light was showing a green left turn arrow for northbound Highway 98 traffic immediately before and at the moment of the collision. Ridgdell was, after all, a neutral witness with a clear and unimpeded view of the intersection who was watching the light and the intersection at that time. From that finding of fact, the operation and status of the traffic signal in the moments leading up to the accident can be readily ascertained. Wayne Curry, Division Traffic Manager for the Alabama Department of Transportation ("ALDOT"), testified as to the phase settings of the traffic light at the CR 32 / Highway 98 intersection, which ALDOT maintains.[6] As demonstrated both by Curry's testimony and the phase diagram found at Government's Exhibit 3, when there is a green arrow for traffic in the left turn lane on Highway 98, the lights for north- and southbound through traffic on Highway 98 are red, as are the lights for west- and eastbound traffic on CR 32. Simply

---

[4] Although her name was on the witness list, both sides elected not to call Perez to testify at trial; therefore, the Court does not have the benefit of her version of events as to what transpired in the seconds leading up to the accident. There is no evidence, for instance, of whether and when she saw the Yukon before the accident, why Perez failed to stop before entering the intersection, or how fast she was going at that time.

[5] It is apparent from the photographs that the van struck the Yukon, not the other way around. The most extensive visible damage by far was to the front of the van and the front passenger door area of the Yukon.

[6] The uncontroverted evidence is that the traffic signal at that intersection was observed by Alabama State Trooper N.E. Dorman to be functioning normally the day after the accident. Moreover, Curry testified that the phase timing at that intersection is tested every three to four months, and that to the best of his knowledge that traffic signal was functioning in accordance with the phase diagram as of the date of the accident. There is no evidence and no reason to believe that it was not operating properly and in a manner consistent with the phase diagram and Curry's testimony at all times relevant to this action.

put, the presence of a green left turn arrow for Ridgdell on northbound Highway 98 means that both plaintiff's Yukon and defendants' van were facing red lights when the green arrow illuminated on northbound Highway 98. What's more, based on Curry's testimony and the phase diagram, the Court finds that all lights in all directions at the CR 32 / Highway 98 intersection had been red for at least two full seconds before Ridgdell's green arrow illuminated, and that the light for traffic headed west on CR 32 (as plaintiff was) had been yellow for four seconds before turning red.[7]

The most salient facts to emerge from the foregoing findings are as follows: There was no green light on westbound CR 32 for at least six seconds before Ridgdell's green arrow was lit. Montgomery drove into the intersection <u>after</u> Ridgdell saw the green arrow; therefore, she could not possibly have had a green light. Moreover, because of the two-second "all red" at that intersection preceding the green arrow for Highway 98 northbound traffic, Montgomery must have run a red light, not a yellow light. We know this because she had not yet reached Ridgdell's position at the intersection when he received a green arrow.[8] Montgomery and Davis both testified at trial that the light for westbound CR 32 traffic was green when their Yukon entered the intersection, and that there was oncoming traffic crossing the intersection from eastbound CR 32 at that time; however, the Court does not credit this testimony.[9]

---

[7] As Curry explained, the purpose of the four-second yellow and the two-second "all red" phases for this signal was to allow sufficient time to clear the intersection in all directions before any green light displayed to authorize motorists to proceed into the intersection.

[8] Simple arithmetic undergirds this finding. Testimony at trial showed that the intersection was 132 feet wide from stop line to stop line. If, as Montgomery testified, she was driving at a speed of 45 mph, she was traveling 66 feet per second (45 mph equals 0.75 miles per minute, equals 3,960 feet per 60 seconds, equals 66 feet per second). Had Montgomery entered the intersection while her light was still yellow, she would have traveled a minimum of 132 feet (66 feet times two seconds to account for the two-second "all red"), or the entire width of the intersection, before Ridgdell received a green arrow. But Ridgdell's testimony (which the Court credits) was that he saw Montgomery's Yukon in the intersection to his right (*i.e.*, less than halfway across the intersection) after he had a green arrow. The only way that could be so is if Montgomery's light was already red when she entered the intersection. The Court so finds.

[9] There are several reasons for this credibility determination. First, Montgomery's and Davis's testimony about oncoming traffic clashes with Ridgdell's testimony that there were no other vehicles in his line of sight when the Yukon flashed into his peripheral vision from the right. Second, Montgomery's and Davis's testimony that their light was green when they entered
(Continued)

But Montgomery's Yukon was not the only vehicle to run a red light. To the contrary, the Court finds that the U.S. Navy van driven by Perez also entered the intersection while the traffic light was red. When Ridgdell saw his green arrow, the only green lights at that intersection were the turn arrows on north and south Highway 98. Through traffic on Highway 98 in the main (non-turn) lanes had red lights. And, as mentioned, there was an "all red" of two seconds before the green arrow illuminated for Ridgdell. Therefore, Perez (who was driving southbound on Highway 98 in a non-turn lane) could not possibly have had a green light because she entered the intersection after Ridgdell saw his green arrow.[10]

In sum, then, both Montgomery's Yukon and defendants' van violated the rules of the road by running red lights at the intersection of CR 32 and Highway 98. The result of both parties failing to obey their respective solid red traffic signals was that the front of the van struck the passenger's side of the Yukon, damaging both vehicles and causing the injuries for which plaintiff seeks redress herein.

---

the intersection cannot be reconciled with Ridgdell's testimony that he had a green left turn arrow when the Yukon appeared in the intersection. If Ridgdell had a green arrow, then Montgomery could not possibly have had a green light for at least six seconds earlier, during which time she would have traveled approximately 396 feet (or three times the length of the intersection). Ridgdell is a disinterested witness with no reason to lie and a clear view of the intersection. By contrast, Montgomery and Davis have a pronounced interest in these proceedings, sustained traumatic injuries in the accident that may affect the reliability of their recollections, and were involved in a minor disagreement about Davis's cell phone use less than a minute before the accident, such that their attention may have been distracted from the roadway. Third, plaintiff's counsel conceded during closing argument that Ridgdell had a green arrow at the time of the accident, and that Curry was correct that Ridgdell's green arrow meant that the opposite road (in this case, CR 32) had a red light. For these reasons, Ridgdell's testimony is credited over that of Montgomery and Davis as to the color of the light and the volume of east-west traffic on CR 32 in that intersection at the time of the accident.

[10]  Defendants cannot seriously dispute this assessment. After all, they presented no evidence that Perez had a green or yellow light when she entered the CR 32 / Highway 98 intersection, and there is abundant evidence (including defendants' own evidence concerning Ridgdell's green arrow and the phasing of the traffic signal at that intersection) supporting the determination that defendant Perez ran a red light too.

**III. Conclusions of Law.**

    *A.    Application of the Federal Tort Claims Act.*

As mentioned, plaintiffs' claims against defendants are brought under the Federal Tort Claims Act ("FTCA"), which confers on district courts exclusive jurisdiction over civil actions against the United States for personal injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The parties agree, and the law is clear, that Montgomery's claims under the FTCA are governed by Alabama law because the alleged tortious act took place in Alabama. *See, e.g., Stevens v. Battelle Memorial Institute*, 488 F.3d 896, 899 n.3 (11th Cir. 2007) ("[l]iability in an FTCA action is determined in accordance with the law of the place where the government's act or omission occurred"); *Miles v. Naval Aviation Museum Foundation, Inc.*, 289 F.3d 715, 722 (11th Cir. 2002) ("The FTCA creates liability for the United States only if the act at issue is a tort in the state where the conduct occurred."); *Kelly v. Serna*, 87 F.3d 1235, 1240 (11th Cir. 1996) ("Under the Federal Tort Claims Act (FTCA), state law determines the liability of an individual defendant.").

    *B.    Plaintiff's Claims Are Barred by Contributory Negligence.*

By statute, Alabama law requires that "[v]ehicular traffic facing a steady circular red signal alone shall stop …before entering the intersection and shall remain standing until an indication to proceed is shown" except in certain limited circumstances (*i.e.*, a funeral procession or turning right after a full stop in the absence of a sign prohibiting same) not present here. Ala. Code § 32-5A-32(3)(a). "Generally, violation of a traffic ordinance or rule of the road constitutes negligence *per se*." *Carroll v. Deaton, Inc.*, 555 So.2d 140, 141 (Ala. 1989) (defendant's failure to equip trailer with required red light while parked or stopped on shoulder is negligence *per se*); *see also Wynn v. Kovar*, 963 So.2d 84, 85 (Ala.Civ.App. 2007) ("We agree … that the violation of one of the rules of the road will, generally speaking, be deemed to constitute negligence *per se*."). Thus, as a general rule, running a red light in violation of § 32-5A-32(3)(a) is negligence *per se* under Alabama law. *See generally Mobile Cab & Baggage Co. v. Armstrong*, 65 So.2d 192, 195 (Ala. 1953) (motorist's failure to heed a red traffic light "is negligence unless there is some justification – such as a funeral procession"); *Borden v. CSX*

*Transp., Inc.*, 843 F. Supp. 1410, 1422 (M.D. Ala. 1993) ("generally speaking … one who runs a stop sign is considered to be negligent *per se*"). The Court concludes that Perez was negligent in running the red light at the CR 32 / Highway 98 intersection as she proceeded southbound on Highway 98.

However, Perez's negligence does not conclude the inquiry. Perez was not the only driver involved in the accident to run a red light. As discussed *supra*, the Court has made an express factual finding that Montgomery also ran a red light at the CR 32 / Highway 98 intersection, in her case the red light for westbound traffic on CR 32. The accident was caused by the unfortunate coincidence that both Montgomery and Perez happened to run red lights from different directions at the same intersection at the same time. Had either one of them stopped at the red light as required by Alabama law and even the most rudimentary rules of the road, there would have been no collision and plaintiff would have been unscathed. Simply put, the Court concludes that Montgomery negligently ran a red light, and that her negligence was a substantial contributing cause of the accident for which she seeks recompense herein.

Ordinarily, a plaintiff's negligence precludes her recovery under Alabama law when that negligence was a contributing cause of her injury. *See, e.g., Phillips v. Seward*, --- So.3d ----, 2010 WL 2546414, *5 (Ala. June 25, 2010) ("The doctrine of contributory negligence provides that a plaintiff cannot recover in a negligence suit where plaintiff's own negligence is shown to have proximately contributed to his damage, notwithstanding a showing of negligence on the part of the defendant.") (citations and internal quotation marks omitted); *QORE, Inc. v. Bradford Bldg. Co.*, 25 So.3d 1116, 1126 (Ala. 2009) ("A plaintiff who negligently contributes to his own injury cannot recover in a negligence action, notwithstanding a showing that the defendant was also negligent."); *Mobile Cab*, 65 So.2d at 195 (in case of traffic accident caused by running red light, "the injured party must himself be free from contributory negligence" in order to recover). Of course, contributory negligence is an affirmative defense, as to which defendants bear the burden of proof. *See Phillips*, 2010 WL 2546414, at *5; *Serio v. Merrell, Inc.*, 941 So.2d 960, 964 (Ala. 2006) ("Contributory negligence is an affirmative and complete defense to a claim based on negligence."). The Court finds that defendants have met their burden of showing that Montgomery negligently contributed to her own injury. Specifically, by running the red light at CR 32 and proceeding into an intersection as to which she plainly did not have the right of way, Montgomery was negligent *per se* in a manner that contributed to the accident. Her presence in

the intersection when she should not have been there, in derogation of a properly functioning traffic signal, was a direct and proximate cause of the collision and her ensuing injuries.

### C. Plaintiff's Claims Are Not Saved by Subsequent Negligence/Last Clear Chance.

Notwithstanding the foregoing, Montgomery contends that she is still entitled to prevail on the merits. Her reasoning, as expressed in her counsel's closing argument, is that this is a case of last clear chance (also known as subsequent negligence). Plaintiff's counsel's oft-repeated refrain was that if the vehicle driven by Perez had stopped at the red light, the collision would never have occurred. Thus, Montgomery's contention is that defendants should still be held liable, despite her contributory negligence, because if Perez had stopped the U.S. Navy van at the intersection like she was supposed to do, she would not have struck the Yukon and Montgomery would not have been injured.

The parties have neither briefed nor argued the finer points of this legal theory; however, the relationship between the doctrines of contributory negligence and last clear chance / subsequent negligence is well settled. Alabama courts have explained that a "victim's initial contributory negligence in placing himself in a position of peril is no defense to a claim of subsequent negligence on the part of the defendant." *Messer v. Turner*, 932 So.2d 104, 109 (Ala.Civ.App. 2005) (citations omitted); *see also Campbell v. Alabama Power Co.*, 567 So.2d 1222, 1228 (Ala. 1990) (Hornsby, C.J., dissenting) ("a plaintiff may not be denied recovery where he is contributorily negligent but the defendant fails to avoid harming him when the defendant has the 'last clear chance' to avoid such injury"); *Zaharavich v. Clingerman By and Through Clingerman*, 529 So.2d 978, 979 (Ala. 1988) ("Contributory negligence, however, is no defense to subsequent negligence."). Thus, if Montgomery has made a showing of subsequent negligence by Perez, then Montgomery's own contributory negligence in placing herself in a position of peril will not bar her recovery in this action. It is on this theory that plaintiff pins her hopes of a favorable judgment.

A plaintiff seeking to overcome her contributory negligence pursuant to the subsequent negligence doctrine must prove "(1) that the plaintiff was in a perilous position; (2) that the defendant had knowledge of that position; (3) that, armed with such knowledge, the defendant failed to use reasonable and ordinary care in avoiding the accident; (4) that the use of reasonable and ordinary care would have avoided the accident; and (5) that plaintiff was injured as a result." *Messer*, 932 So.2d at 109 (citations omitted); *Zaharavich*, 529 So.2d at 979 (same). The Court

finds that the evidence presented at trial is inadequate to establish the second and fourth elements, at a minimum.

With respect to the second element, Alabama law is quite clear that a plaintiff cannot rely on the subsequent negligence / last clear chance doctrine without proof of the defendant's actual knowledge of her perilous position. *See, e.g., Eason v. Comfort*, 561 So.2d 1068, 1071 (Ala. 1990) (doctrine of subsequent negligence does not apply unless plaintiff shows defendant's actual knowledge of plaintiff's peril); *Elba Wood Products, Inc. v. Brackin*, 356 So.2d 119, 122 (Ala. 1978) (plaintiff pursuing subsequent negligence theory must show that "plaintiff was in peril and that defendant had actual knowledge of plaintiff's peril"); *Brooks v. Cox*, 231 So.2d 302, 304 (Ala. 1970) (in case involving vehicle collision in intersection, plaintiff could not recover on subsequent negligence theory because "there is nothing [i]n the record to show that the defendant had actual knowledge of the car's position at the intersection"). Where is the evidence that Perez (the driver of the U.S. Navy van) had actual knowledge that Montgomery was in a position of peril (*i.e.*, that she was crossing an intersection as to which she had a red light)? Neither side called Perez to the stand at trial, so there is certainly no direct evidence that she knew Montgomery's Yukon was in the intersection at any time prior to the accident. Nor was sufficient evidence presented from which it might be reasonably inferred that Perez must have seen the Yukon in a position of peril before impact. *See generally Zaharavich*, 529 So.2d at 980 ("knowledge of the plaintiff's peril in a subsequent negligence case may not be 'imputed' to a defendant; the defendant's knowledge may, however, be 'inferred,' if such an inference would be reasonable under the totality of the circumstances"). For example, there was no testimony or other evidence as to the speed at which Perez's vehicle was traveling, whether Perez had an unobstructed view of the intersection as she approached it, what the position of her vehicle was when the Yukon entered the intersection, when the Yukon entered her line of sight, whether Perez took any evasive measures at any time before impact, and so on. All we have is evidence that Perez's vehicle struck Montgomery's vehicle, rather than the other way around. But to say that Perez hit Montgomery's car is not to say that Perez had any inkling (much less actual knowledge) of Montgomery's position of peril, as is required for the doctrine of subsequent negligence to attach.

Similarly, the fourth element of subsequent negligence requires a showing that "the use of reasonable and ordinary care would have avoided the accident." *Messer*, 932 So.2d at 109.

The critical point is that subsequent negligence applies only if the defendant could have avoided the accident by using reasonable care after becoming aware of plaintiff's position of peril. It is a misleading oversimplification to argue (as plaintiff does) that Perez could have avoided the accident by stopping at the red light. Whether Perez could have stopped at the red light, without more, is immaterial for subsequent negligence purposes;[11] rather, what is important is whether Perez could have stopped or otherwise avoided the collision after obtaining actual knowledge that Montgomery was in a perilous position.

Because there is no evidence, and no reason to believe, that Perez knew of Montgomery's perilous position prior to entering the intersection, the Court cannot conclude that Perez could have prevented the accident by using reasonable and ordinary care after acquiring such knowledge. *See Eason*, 561 So.2d at 1071 (doctrine of subsequent negligence "is not properly applied where the manifestation of the plaintiff's peril and the accident are virtually instantaneous," such as where defendant did not see plaintiff before impact in car accident); *Elba Wood*, 356 So.2d at 122 (plaintiff pursuing subsequent negligence theory must show that "plaintiff was in peril and that defendant had actual knowledge of plaintiff's peril but negligently failed to prevent the accident when he had the means available to do so"); *Dees v. Gilley*, 339 So.2d 1000, 1002 (Ala. 1976) (subsequent negligence / last clear chance theory does not go to jury unless there is evidence that defendant acquired actual knowledge of plaintiff's perilous position in time to avoid the accident); *Brooks*, 231 So.2d at 304 (in case involving vehicle

---

[11] Plaintiff's reasoning could be turned around to apply equally against plaintiff, to-wit: If Montgomery had stopped her Yukon at the intersection for the red light as she was supposed to do, her vehicle would never have traveled into the intersection and would not have been struck by the U.S. Navy van. Subsequent negligence is not merely an exercise in identifying "what ifs" by which the defendant could have prevented the accident, separate and apart from her knowledge of the plaintiff's position of peril. Rather, the purpose of subsequent negligence is to mitigate the harsh effects of contributory negligence by holding a defendant liable for failing to act reasonably to prevent injury when that defendant possesses actual knowledge that the plaintiff is in a position of peril (even if she is in that position by virtue of her own negligence). In other words, if Perez saw the Yukon coming (even if it was Montgomery's fault that the Yukon did not stop) and could reasonably have stopped or swerved to avoid the accident, but did not do so, then Montgomery's negligence should not insulate Perez from liability for her own subsequent negligence in failing to prevent the accident. That is the type of fact pattern that the doctrine of subsequent negligence was designed to reach; however, it simply is not present here.

collision in intersection, plaintiff could not recover on subsequent negligence theory because "[o]ur cases hold that the defendant must have actual knowledge of the perilous position of the person injured and fail to take due and preventive ca[r]e"). All indications are that Perez became aware of Montgomery's perilous position, if ever, almost contemporaneously with the collision.[12]

Simply put, plaintiff has attempted to combat her own contributory negligence by framing this case as one of subsequent negligence / last clear chance. But the Court finds from the evidence presented at trial that plaintiff has failed to meet her burden of showing that defendant Perez had actual knowledge of plaintiff's perilous position, much less that she acquired such knowledge in time to take any reasonable steps that would have prevented the accident. Therefore, the subsequent negligence / last clear chance doctrine has no application here, and cannot rescue plaintiff from her own contributory negligence.

## IV. Conclusion.

From the evidence and arguments presented at trial and in the parties' briefs, the Court finds that defendant Perez negligently ran the red light, but that defendants have established the affirmative and complete defense of contributory negligence by showing that Montgomery likewise ran a red light at that intersection and that her negligence was a contributing cause of her injuries. Additionally, the Court concludes that plaintiff cannot invoke the doctrines of subsequent negligence / last clear chance to overcome her own contributory negligence, because the evidence presented is insufficient to support a finding that defendant Perez was actually aware of plaintiff's peril, much less that she acquired such knowledge in time to take evasive action that would have prevented the accident. Accordingly, the Court finds in favor of defendants, the United States of America and Wendy Lynn Perez, and against plaintiff Vera

---

[12] This conclusion is supported by the testimony of Montgomery and Davis, both of whom testified that they never saw the U.S. Navy van approaching on Highway 98 southbound until the last possible instant before impact. If Montgomery and Davis did not see the van in time to avoid a collision, it is reasonable to infer that Perez likewise did not see Montgomery's Yukon (which was barreling through the intersection at a speed of roughly 45 mph) in time to avoid the collision. At any rate, plaintiff has not shown, either through direct proof or reasonable inferences drawn from a totality of the circumstances, that Perez had actual knowledge of Montgomery's perilous position in time to prevent the collision.

Annette Montgomery.  This determination is likewise fatal to the claims of plaintiff State Farm Mutual Auto Insurance Company, which are wholly derivative of Montgomery's.

Plaintiffs will have and recover nothing, and judgment will be entered in favor of defendants.

DONE and ORDERED this 17th day of September, 2010.

<u>s/ WILLIAM H. STEELE</u>
CHIEF UNITED STATES DISTRICT JUDGE